## McLin v. Johnson.

April 26, 1946.
Rehearing denied October 8, 1946.

Leebern Allen, E. C. O'Rear and Allen Prewitt for appellant.
F. T. Allen and O. J. Cockrell for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

By written contract of date February 24, 1941, the appellant, Mrs. R. J. McLin, leased to the appellee, John Johnson, a farm in Wolfe County, Kentucky, for agricultural purposes at an annual rental of $200. It was stipulated that the rental was to be: "* * * payable at or before the end of each year, from the sale of tobacco or

other crop or cash proceeds, during the life of this contract, and especially agrees to pay ($75.00) seventy-five dollars of this year's cash rental on or about April 1st, 1941, the balance of it ($125.00) at or before the end of the year.''

This action was filed in the Wolfe circuit court by the lessor, appellant, against the lessee, appellee, on November 11, 1944, by which plaintiff sought to recover judgment against the defendant for $1,103 upon the ground that defendant had violated the terms of the lease contract with reference to the excess acreage of tobacco he grew on the rented premises for the years 1943 and 1944, in which excess she alleged that she was entitled to one-half of the proceeds thereof which she calculated to be the amount for which she sought judgment. A copy of the contract was filed as an exhibit with the petition and thereby became a part of it. The court sustained a demurrer to the petition and upon failure of plaintiff to amend it was dismissed, to reverse which she prosecutes this appeal.

Upon the filing of the petition and affidavit for that purpose, plaintiff obtained an attachment which was levied on the tobacco crop grown by defendant for the year 1944, which he released by executing the proper bond. The theory upon which plaintiff and her counsel base the cause of action stems from what we are convinced is an erroneous interpretation of two clauses contained in the written lease and which are, (1), ''second party is to have everything he can make on the farm annually, in fact, anything he can raise or save, in corn, oats, wheat, or hay, or from the gardens is to be the property of second party,'' and (2) ''party of the first part agrees to let second party have (1) one acre of the base tobacco acreage, and to furnish him marketing card to sell the tobacco. It is further understood that first party is not to be penalized for any excess tobacco acreage, but if such (excess) acreage should exist, then second party will be liable for any sum he might be penalized.''

The argument of counsel for plaintiff, and appellant, is, that clause (1) stating the agricultural products that defendant might grow and exclusively have, did not mention tobacco. But a very manifest reason for not mentioning that product in that clause was because she in-

tended to and did later on in the lease specify with reference to the growing of tobacco by defendant on the rented premises, and which specification is contained in the inserted clause (2) in the lease. If the favorable deduction sought to be drawn by plaintiff's counsel as to clause (1) be correct, it would literally mean that he was, by implication, prohibited from growing any tobacco at all on the leased premises and which possibly would be true but for the later insertion of clause (2) relating exclusively to the growth of tobacco.

It will, however, be perceived that there is nothing in clause (2) inhibiting defendant from growing as much tobacco as "he can raise or save" (contained in clause 1), but only that if he did grow more than one acre of tobacco (which was the base acreage, as lessor concluded, under Federal regulations existing at that time) then "first party is not to be penalized for any excess tobacco acreage, but if such acreage should exist, then second party will be liable for any sum he might be penalized." By the insertion of that language plaintiff was but stipulating that as between her and lessee (defendant) he alone should be liable for any penalty that might be assessed for excess acreage above the allotted base amount that should be grown in tobacco. If it had been intended by the lessor to mandatorily limit the acreage of tobacco that defendant should grow on the leased premises, then why stipulate, and *by implication* say, that an excess above one acre in tobacco might be grown, but in the event it was done, then defendant should be exclusively obligated as between the parties to the lease to pay any penalty that might be assessed?

By no sort of distortion of the language can it be concluded that plaintiff in case defendant grew more than one acre of tobacco she should share in the excess, since the contract contains nothing, either expressly or by possible implication, that the contract with reference to the excess acreage in tobacco should be governed by the rights of landlord and tenant under a "share the crop" tenancy of cropping on the shares wherein each party receives a stipulated amount of the produce grown. It is not intimated in plaintiff's petition that the excess acreage of tobacco grown by defendant produced any damage to the land upon which it was grown, or in any manner damaged plaintiff in any respect.

The language in clause (2) supra of the lease contract saying ''First party is not to be penalized for any excess tobacco acreage, but if such acreage should exist, then second party will be liable for any sum he might be penalized,'' is susceptible to no other possible interpretation than that defendant might if he chose to do so, grow more than one acre of tobacco, but if he did so then he alone should, as between him and his lessor, assume and pay any penalty that might be assessed.

But it is argued by counsel for appellant that when defendant grew on the rented premises more than one acre of tobacco in any year he became a trespasser and a tort-feasor, and thereby became liable to plaintiff for any injury that she might sustain, which, perhaps would be true if there was a mandatory limitation upon the amount of acreage in tobacco that defendant might grow. However, even that theory cannot be sustained, since the petition is based entirely upon the plaintiff's right as a creditor to recover from defendant, her debtor, what she claims is due her under the contract sued on, and we are entirely unfamiliar with any principle of law holding that a debtor commits a technical tort when he fails to pay his contractual obligation to his creditor.

We also find this clause in the lease contract: ''Second party to have the free use of barns, houses, and improvements of all kinds to be used by him in connection with making the crops and improving the lands,'' which would seem to indicate that there was a plurality of barns on the premises, and there is nothing to show that defendant was to embark in stock raising whereby he would need stock barns; and certainly one barn could take care of all the tobacco that could be grown on one acre with room to spare, and with no tobacco to be housed either in the remaining space of that one barn, or any other that might be located on the premises. The last-quoted language would therefore seem to point toward, and to some extent support, the interpretation we have heretofore made of clause (2) supra in the lease contract.

We conclude, therefore, that the court properly sustained the demurrer filed to the petition and dismissed it upon the failure of plaintiff to further plead. Wherefore, the judgment is affirmed.